IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Marcello Parks, )
    Petitioner, )
                                               )
v.                                           )     1:10cv1217 (LMB/TCB)
                                             )
Warden Patricia R. Stansberry, )
    Respondent. )

## MEMORANDUM OPINION

Marcello Parks, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the computation of his sentence by the Bureau of Prisons ("BOP"). Respondent has filed motions to dismiss the petition for lack of jurisdiction and alternatively for summary judgment, with a supporting memorandum and exhibits. On May 9, 2011, Parks was advised of his right to file responsive materials, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). When no reply was filed by June 7, 2011, an Order was entered directing Parks to show cause within fourteen (14) days why his petition should not be dismissed. On June 13, 2011, Parks filed a response to the motions to dismiss and for summary judgment, and respondent filed a reply on June 20. Parks submitted a sur-reply on July 5, 2011, and on August 9, he filed a Motion for Expeditious Conclusion/Judgment. For the reasons which follow, both petitioner's Motion for Expeditious Conclusion/Judgment and respondent's Motion for Summary Judgment will be granted, and summary final judgment will be entered in respondent's favor. Respondent's motion to dismiss will be denied as moot.

## I. Background

The following material facts are uncontroverted. On June 21, 2000, Parks was arrested by officers of the Baltimore, Maryland, Police Department, charged with possession of a controlled dangerous substance, and released on bond. Resp. Ex. 1, ¶ 6; Att. 2.[1]

On August 18, 2000, Parks was arrested by Maryland authorities on a charge of armed robbery and confined at the Baltimore Detention Center. When the charge was dismissed, Parks was released on October 11, 2000 to the custody of the Howard County, Maryland, Sheriffs Department and charged with robbery, robbery with a deadly weapon, and two counts each of first and second degree assault. Resp. Ex. 1, ¶ 7; Att. 2.

On August 31, 2000, while Parks was in custody in Maryland, he was indicted in the United States District Court for the District of Maryland and charged with bank robbery in United States v. Jordan, et al., Case No. 1:00cr427 (JFM). Resp. Ex. 1, ¶ 8; Att. 3. On September 11, 2000, the Court issued a writ of habeas corpus *ad prosequendum*, and Parks made his initial appearance on September 28. Resp. Ex. 1, ¶ 9; Att. 3. After Parks pled guilty to one count of bank robbery (aiding and abetting), he was sentenced on April 27, 2001, to serve 168 months in prison. Resp. Ex. 1, ¶ 10; Att. 4. Although Parks remained in the primary custody of Maryland authorities, the judgment was silent with regard to whether the federal sentence was to run consecutively or concurrently to any future Maryland sentence. Id. Subsequently, however, on October 15, 2001, the Court entered an amended judgment that re-imposed the 168-month term of imprisonment and specified that it was

---

[1] Respondent's Exhibit 1 is the sworn declaration of Patricia Kitka, who has been employed as a Management Analyst at the BOP's Designation and Sentence Computation Center since December, 2005. Id., ¶ 1. She has worked in the area of inmate sentence computation since March, 1989. Id., ¶ 2. Appended to the declaration are several attachments, which will be referenced in this Memorandum Opinion as "Att." followed by the appropriate number.

"to run concurrently with any state sentence that the defendant is now serving or any other sentence that is imposed hereafter for any crime committed prior to the date of this sentence." Resp. Ex. 1, ¶ 11; Att. 5.

On December 12, 2003, the Circuit Court of Howard County, Maryland sentenced Parks to 20 years in prison for bank robbery, suspended the entire term of imprisonment, and awarded sentence credit for time served from October 11, 2000 to December 12, 2003. A five-year term of probation was ordered to commence upon Parks' release from federal custody. Resp. Ex. 1, ¶ 12; Att. 6.

Three days later, on December 15, 2003, Parks was released to the custody of the United States Marshals Service to serve the remainder of his federal sentence. Resp. Ex. 1, ¶ 13; Att. 7. Subsequently, on April 29, 2004, the BOP approved a *nunc pro tunc* designation which allowed Parks' federal sentence to commence on April 27, 2001, the date it was imposed. Resp. Ex. 1, ¶ 14; Att. 8.[2] In preparing Parks' sentence computation, the BOP applied prior custody credit for June 21, 2000 (the date of Parks' detention by Baltimore authorities) and from August 18, 2000 through April 26, 2001 (the dates during which Parks was in the primary custody of Howard County, Maryland). Resp. Ex. 1, ¶ 15; Att. 1. Parks is scheduled to complete his federal term of imprisonment through good conduct time release on October 27, 2012. Id.

In this petition for habeas relief pursuant to § 2241, Parks argues that the BOP erred in failing

---

[2] A *nunc pro tunc* designation seeks to have the BOP designate a prisoner's prior facility of state custody as the place of federal custody for purposes of a federal sentence. The result is that time served in state custody is credited against the time the inmate must serve on a federal sentence, in effect causing the state and federal sentences to run concurrently. See Trowell v. Beeler, 135 Fed. App'x 590, 593 (4th Cir. 2005).

3

to grant him prior custody credit for the period from April 27, 2001 through December 12, 2003. Parks asserts, and respondent does not dispute, that he has exhausted available administrative remedies as to his claim.[3] Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears

---

[3]In the context of federal habeas petitions challenging sentence computations, parole determinations, or good time credits calculations, courts have required petitioners first to exhaust their administrative remedies. See United States v. Wilson, 503 U.S. 329, 335-36 (1992) (holding that Congressional changes to 18 U.S.C. § 3568 did not divest the Federal Bureau of Prisons ("BOP") of the authority to compute federal prisoners' sentences and noting that federal prisoners may seek judicial review of these computations after exhaustion of their administrative remedies); United States v. Bayless, 940 F.2d 300, 304-305 (8th Cir. 1991) (refusing to reach petitioner's challenge to computation of his sentence because petitioner had failed to exhaust his administrative remedies with the BOP); United States v. Lucas, 898 F.2d 1554, 1555-56 (11th Cir. 1990) (holding that a dissatisfied prisoner may only avail himself of judicial review after an adverse administrative decision by the BOP regarding his sentence calculation). Although the Fourth Circuit apparently has yet to provide binding authority addressing this issue, it has required exhaustion in several unpublished opinions. See Carter v. Stansberry, 158 Fed. App'x 513, 2005 WL 3556056 (4th Cir. Dec. 29, 2005) (affirming dismissal without prejudice of § 2241 application for petitioner's failure to exhaust administrative remedies); Straughter v. Stansberry, 140 Fed. App'x 494, 2005 WL 1820820 (4th Cir. Aug. 3, 2005) (same); Locklear v. Stansberry, 126 Fed. App'x 153, 2005 WL 927644 (4th Cir. Apr. 21, 2005) (same); United States v. Harris, 11 Fed. App'x 108, 2001 WL 378337 (4th Cir. Apr. 16, 2001) (noting that "[t]o the extent that Harris seeks to challenge the computation of his sentence through a § 2241 petition, he must first exhaust administrative remedies" (citing Wilson)).

[4]Respondent's Motion to Dismiss for lack of subject matter jurisdiction is unexplained, and her Memorandum of Law sets out no argument concerning her position on that request. Therefore, as it is apparent from her arguments and exhibits that respondent is entitled to the summary judgment she seeks in the alternative, her Motion to Dismiss will be denied as moot.

the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

The computation of federal sentences is solely within the purview of the BOP. Wilson, 503 U.S. at 335. In any such instance, the BOP must make two separate determinations: (1) the date on which the federal sentence commences, and (2) the extent to which the defendant can receive credit for prior time spent in custody. Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). In Parks' case, both components of this equation were calculated

appropriately.

> Pursuant to 18 U.S.C. § 3585(a), a federal sentence commences
>
>> ... on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

To determine when an offender is "received" by the Attorney General, a court must ascertain the sovereign that has primary jurisdiction over the offender. Generally, the sovereign which first arrests the offender has primary jurisdiction over him. United States v. Warren, 610 F.2d 680, 684 - 85 (9th Cir. 1980) ("[T]he sovereign which first arrests an individual acquires priority of jurisdiction for ... trial, sentencing and incarceration.") The sovereign with primary jurisdiction may relinquish jurisdiction to another authority by releasing the offender from its custody. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). However, temporary release of an offender pursuant to a writ of habeas corpus *ad prosequendum* does not relinquish primary jurisdiction. See United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) ("A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.")

Here, the state of Maryland established primary jurisdiction over Parks when Maryland authorities arrested him on August 18, 2000. Resp. Ex. 1, ¶ 7. Maryland retained primary jurisdiction over Parks until he completed the service of his state obligation and was released to federal authorities on December 15, 2003. Id. at ¶ 13. Ordinarily, then, Parks would be deemed

to have commenced the service of his federal sentence on that date. However, because the BOP in this case granted Parks a *nunc pro tunc* designation to April 27, 2001, his federal sentence commenced on the date it was imposed rather than the date Parks was received into primary federal custody. See n. 2, supra.

Pursuant to 18 U.S.C. § 3584(a), "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively ... Multiple terms of imprisonment imposed at different times run consecutively unless that court orders that the terms are to run concurrently." If a judgment is silent on the matter, the federal term of imprisonment is deemed to run consecutive to an undischarged term of imprisonment. Id. Here, as described above, the federal sentencing court amended its judgment on October 15, 2001, to order Parks' federal sentence to run concurrent to any current or future state sentence for any crime committed prior to the date of the federal sentence. Resp. Ex. 1, ¶ 11. Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate the facility at which a prisoner is to serve a federal sentence, and in this regard it has "wide discretion." Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991). It is within the BOP's discretion to designate a state facility where an inmate previously served a state sentence as the place of his federal incarceration *nunc pro tunc*. Id. at 483. In this case, because the federal sentencing court made its intent clear by ordering a concurrent federal sentence in the amended judgment, the BOP commenced Parks' federal sentence on the earliest possible date, April 27, 2001, the date the sentence was imposed. See Coloma v. Holder, 445 F.3d 1282, 1285 (11 Cir. 2006) (federal sentence cannot commence before the date it is imposed). Therefore, Parks can assert no error with respect to the BOP's calculation of the first component of

his sentence, because he has received the most favorable treatment possible under the law.

As to the BOP's second decision in Parks' case, regarding his prior custody credit, 18 U.S.C. § 3585(b) provides:

> (b) Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Here, the BOP awarded Parks prior custody credit for June 21, 2000 (day spent in custody of Baltimore authorities), and from August 18, 2000 (date of arrest by Howard County, Maryland authorities) through April 26, 2001 (date prior to imposition of federal sentence). Resp. Ex. 1, ¶ 15. Parks' argument that he should also receive credit from April 27, 2001 until December 12, 2003 is misplaced, because that period falls outside the statutory definition of prior custody credit as "time ... spent in official detention **prior to** the date the sentence commences." 18 U.S.C. § 3585(b). Moreover, because Parks' federal sentence has run continuously since April 27, 2001, he effectively has been receiving "credit" for that entire period, so the BOP is not authorized to award him additional credit for that same period. See Wilson, 503 U.S. at 337 ("Congress made it clear that a defendant could not receive a double credit for his detention time."); see also Alls v. Stansberry, 2010 WL 723034 (E.D. Va. Mar. 1, 2010) (Brinkema, J.) (holding that federal prisoner was not entitled to have credit applied against his federal sentence that previously was applied against a state

sentence), aff'd, 396 Fed. App'x 932 (4th Cir. 2010);[5] Nale v. Stansberry, 2009 WL 1321507 (E.D. Va., May 11, 2009) (O'Grady, J.) (same).[6] Therefore, Parks has failed to demonstrate that the BOP erred in computing either component of his federal sentence.

In his response to respondent's motion for summary judgment, Parks first asserts that he has been denied counsel and does not have the knowledge to proceed past his original claim. To the extent that that statement might be interpreted as a renewal of Parks' previous motion for the appointment of counsel, his request lacks merit for the reasons that were explained in the May 19, 2011 Order denying Parks' Request/Motion for Counsel. [Dkt. 13] Parks also appears to allege that documents have not been supplied which are necessary both for the BOP to calculate his sentence correctly, and for him to rebut the respondent's position. However, as is apparent from the discussion herein, the records supplied by the BOP to the respondent, and by the respondent to the Court, are sufficient to ascertain that the BOP has committed no error with regard to computation of Parks' federal sentence, and the Court credits the respondent's statement that all documents attached as exhibits to respondent's memorandum have been provided to Parks. Reply Mem. at 2, n.1. Therefore, Parks' inference that he has been placed at a disadvantage in his ability to respond to the motion for summary judgment is unavailing. As to the merits of Parks' reply, he merely recaps his earlier arguments in conclusory fashion, so for the reasons which have been discussed, his argument lacks merit, and the respondent is entitled to the summary judgment she seeks.

Lastly, on August 9, 2011, Parks filed a Motion for Expeditious Conclusion/Judgment, in which he states that because his projected release date is October 27, 2012, he will begin his

---

[5] A copy of the unpublished opinion is attached.

[6] A copy of this unpublished opinion has been supplied by respondent. See Resp. Ex. 2.

transition period at a "release residential center" in April, 2012, and he asks that this petition be adjudicated before it is rendered moot by those events. Because this Memorandum Opinion and the accompanying Order constitute the relief petitioner seeks, his motion will be granted.

### IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment will be granted, and summary final judgment will be entered in her favor. Respondent's motion to dismiss will be denied as moot, and petitioner's Motion for Expeditious Conclusion/Judgment will be granted. An appropriate Order shall issue.

Entered this  1st  day of  September  2011.

/s/ _____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

Westlaw.

Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)
(Cite as: 2010 WL 723034 (E.D.Va.))

Page 1

**H**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, E.D. Virginia,
Alexandria Division.
Marcus ALLS, Petitioner,
v.
Patricia R. STANSBERRY, Respondent.

No. 1:09cv506 (LMB/TRJ).
March 1, 2010.

Marcus Alls, Petersburg, VA, pro se.

Dennis Carl Barghaan, Jr., United States Attorney's Office, Alexandria, VA, for Respondent.

*MEMORANDUM OPINION*
LEONIE M. BRINKEMA, District Judge.

*1 Marcus Jabor Alls, a federal inmate housed in the Eastern District of Virginia and proceeding *pro se,* has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). Respondent has filed motions to dismiss the petition and alternatively for summary judgment, with a supporting memorandum and exhibits. Petitioner was given the opportunity to file responsive materials, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), and he has filed a pleading captioned as a Motion in Response to Respondent's Motion to Dismiss with a memorandum in support. Respondent has filed a reply. For the reasons that follow, respondent's motion for summary judgment must be granted, and summary final judgment will be entered in her favor. Respondent's motion to dismiss will be denied as moot.

**I. Background**
The following material facts are uncontroverted. On January 22, 2005, Alls was arrested for carrying a pistol by local police in Troy, Alabama. Resp. Ex. 1, ¶ 5.[FN1] He was released on bond the following day. Att. 1. On July 20, 2005, Alls pleaded guilty to the charge and paid a fine. Resp. Ex. 1, ¶ 5.

FN1. Respondent's Exhibit 1 is the sworn declaration of J.R. Johnson, a Correctional Program Specialist at the BOP's Designation and Sentence Computation Center. Appended to the declaration are several attachments, which will be referenced in this Memorandum as "Att." followed by the appropriate number.

On August 3, 2005, Alls was indicted in the United States District Court for the Middle District of Alabama for the offense of possession of a firearm by a convicted felon. He was arraigned on the charge on August 18, 2005, pleaded not guilty, and was released on bond. Resp. Ex. 1 at ¶ 6; Att. 2.

On December 31, 2005, Alls again was arrested by Alabama police and charged with first degree burglary. Resp. Ex. 1 at ¶ 7; Att. 2. Alls remained in state custody following this arrest. *Id.* On the same date, the United States District Court for the Middle District of Alabama issued a warrant for Alls' arrest, based on a violation of the conditions of his release on bond. Resp. Att. 2. Alls was temporarily released from an Alabama jail to the United States Marshals Service ("USMS") on February 9, 2006, pursuant to a federal writ of habeas corpus *ad prosequendum.* Resp. Ex. 1 at ¶ 7; Att. 2. On February 24, 2006, following a jury trial, Alls was convicted of the offense of felon in possession of a firearm, Resp. Ex. 1 at ¶ 8, and he was sentenced on June 8, 2006 to serve fifty-seven (57) months in prison. Resp. Ex. 1 at ¶ 9; Att. 5-6. The judgment specified that "[i]f the defendant is found not guilty in the State Court case and does not receive credit from December 20, 2005 through February 9, 2006, this imprisonment time should be credited to this Federal sentence." Att. 5 at 2. Alls

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)
(Cite as: 2010 WL 723034 (E.D.Va.))

Page 2

was returned to the Alabama jail on June 16, 2006. Resp. Ex. 1 at ¶ 10; Att. 3 at 2.

On July 23, 2007, Alls pleaded guilty to the state burglary charge, and received a sentence of ten (10) years imprisonment, with eight (8) years suspended. Resp. Ex 1 at ¶ 11; Att. 1, 7. Alls received 579 days jail credit toward the Alabama sentence, representing the time he spent in custody beginning on the date of his arrest, December 21, 2005, through July 22, 2007, the day before sentence was imposed on the state charge. Att. 8. The Alabama judgment indicated that Alls' state sentence was to run concurrently with the federal sentence which had been imposed but had yet to be served. Att. 7.

*2 Alls was released from the Alabama Department of Corrections to the USMS to begin service of the federal sentence on December 18, 2007. Resp. Ex. 1 at ¶ 12; Att. 3 at 2; Att. 9. In accord with Program Statement 5880.28 and 18 U.S.C. §§ 3584(a) and 3585(a), the BOP prepared a sentence computation for Alls reflecting commencement of his federal sentence on December 18, 2007, the date Alls was released by Alabama authorities and was received into the primary custody of the USMS. Resp. Ex. 1 at ¶¶ 13-14; Att. 10-11. Alls was granted prior custody credit for the time he already had spent in federal custody, that is, from the date of his arrest on January 22, 2005 until his release on bond the following day, and for August 18, 2005, the date of his federal arraignment. Att. 11 at 2. The BOP did not apply prior custody credit against Alls' federal sentence for the time during which he was in the primary custody of the State of Alabama in service of his Alabama sentence, from December 21, 2005 until July 22, 2007. Resp. Ex. 1 at ¶¶ 15-16. However, as noted above, Alls did receive credit for that period of time against his Alabama sentence. Att. 8.

On May 23, 2008, Alls submitted an administrative remedy request to the warden of FCI Petersburg, his present place of incarceration, claiming that his release date was calculated incorrectly. Resp. Ex. 1 at ¶ 17. The BOP treated Alls' request for prior custody credit as a request for *nunc pro tunc* designation,[FN2] and Alls' sentencing court was contacted for its position regarding a concurrent designation. *Id.*; Att. 13. When no response was received from the sentencing court within sixty (60) days,[FN3] the BOP determined based on the factors enumerated at 18 U.S.C. § 3621(b) that a concurrent designation was not appropriate in Alls' case.[FN4] Resp. Ex. 1 at ¶¶ 18-19; Att. 14. Based on these calculations and his projected earning of good time credits, Alls presently is scheduled to be released from BOP custody on February 4, 2012. Resp. Ex. 1 at ¶ 20; Att. 11 at 2.

> FN2. In *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir.1991), where a federal prisoner sought a writ of habeas corpus after the BOP failed to consider his request to designate a state prison as his place of confinement for purposes of determining his entitlement to credit against his federal sentence for time he spent in state custody, the Third Circuit held that "federal authorities have an obligation ... to look at Barden's case and exercise the discretion the applicable statute grants the [BOP] to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*." A *nunc pro tunc* designation seeks to have the BOP designate a prisoner's prior facility of state custody as the place of federal custody for purposes of a federal sentence. The result is that time served in state custody is credited against the time the inmate must serve on a federal sentence, in effect causing the state and federal sentences to run concurrently. *See Trowell v. Beeler*, 135 Fed. Appx. 590, 593 (4th Cir.2005).

> FN3. Alls subsequently wrote to the Alabama sentencing court in August, 2009, requesting a copy of the letter the court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

https://web2.westlaw.com/print/printstream.aspx?mt=Westlaw&prft=HTMLE&vr=2.0&des... 9/1/2011

Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)
(Cite as: 2010 WL 723034 (E.D.Va.))

had received from the BOP. Apparently prompted by that correspondence, the court addressed a letter to the BOP's Designation and Computation Center on September 21, 2009, stating that it "only recently received your letter dated August 29, 2008, requesting a retroactive designation of Marcus Jabor Alls. This Court takes no position with regard to said designation." Pet. Mot. in Response, Ex. 1 & 1(a). Because the court expressed no opinion with regard to a *nunc pro tunc* designation, Alls plainly suffered no prejudice when the BOP did not receive the court's response in a more timely manner.

FN4. Section 3621(b) provides that the BOP shall designate the place of a prisoner's imprisonment, and may designate any facility that meets minimum standards and that the BOP determines is "appropriate and suitable, considering-

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

In this petition for habeas relief pursuant to § 2241, Alls argues that the BOP erred in failing to provide him with credit against his federal sentence for the time he spent in Alabama custody. Essentially, Alls contends that the BOP has erred by failing to comply with the Alabama judgment which specified that his state sentence should run concurrently with the then-unserved federal sentence. In Alls' view, to rectify this error, the BOP must now be directed to credit the time Alls spent in Alabama custody against his federal sentence. Pet. at 3. Alls has submitted exhibits which appear to demonstrate, and respondent does not dispute, *see* Resp. Ex. 1 at ¶ 21, that Alls has exhausted available administrative remedies as to his claim. Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [FN5] Fed.R.Civ.P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. *Id.* at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he sub-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

stantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s][a] fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. *Matsushita*, 475 U.S. at 587.

> FN5. Respondent explains that she moved both for dismissal of Alls' petition and alternatively for summary judgment because it remains unsettled in the applicable case law whether the limitations on federal courts' ability to review BOP decisions on *nunc pro tunc* designations are jurisdictional in nature. If they are, materials outside the pleadings can be reviewed on a motion to dismiss, without transforming the motion into one for summary judgment. *Sec'y of State v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.2007). Here, however, as the question remains open, respondent's arguments and exhibits will be reviewed under the more rigorous standard for summary judgment in an abundance of caution.

### III. Analysis

*3 It is now universally established that, pursuant to the Supremacy Clause, the BOP is not required to effectuate a provision of a state court judgment that a state sentence should run concurrent to a previously-imposed federal judgment. *See Barden*, 921 F.2d at 478 n. 2 (recognizing that, as the result of the Supremacy Clause, "neither the federal courts nor the [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently."); *accord, Trowell*, 135 Fed. Appx. at 593-94; *Waters v. O'Brien*, 2009 WL 2016293 at *4 (W.D.Va. July 9, 2009) ("[T]he state court's intent is not binding on federal authorities or the BOP."). [FN6] Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate the facility at which a prisoner is to serve a federal sentence, and in this regard it has "wide discretion." *Barden*, 921 F.2d at 476. While it is within the BOP's discretion to designate a state facility where an inmate previously served a state sentence as the place of his federal incarceration *nunc pro tunc*, there is no requirement that it grant such a request. *Id.* at 483. Federal habeas review of the BOP's decision in such an instance is highly deferential, *Taylor v. Sawyer*, 284 F.3d 1143, 1149 (9th Cir.2002), and once the BOP has considered the request, judicial consideration is limited to whether an abuse of discretion occurred. *Barden*, 921 F.2d at 478. So long as the BOP undertakes an individualized review of an inmate's case and makes a decision to deny a request for designation *nunc pro tunc* after analyzing the five relevant factors prescribed by § 3621, habeas corpus relief from its determination is unavailable. *Nale v. Stansberry*, 2009 WL 1321507 at *5 (E.D.Va. May 11, 2009) (O'Grady, J.).

> FN6. Copies of the unpublished opinions cited in this Memorandum Opinion are included in the record as Resp. Ex. 3.

Applying these principles to the facts in this case, Alls is entitled to no federal relief. Alls' federal sentence was imposed before his state sentence, and the federal judgment of conviction was silent with respect to whether that sentence would run concurrent or consecutive to any sentence Alls might face on his then-pending state charge. Resp. Art. 5. When Alls subsequently was sentenced on his state conviction, the state judgment provided that the state sentence was to run concurrently with the previously entered (but yet to be served) federal sentence. The state judgment also credited Alls with the 597 days he had spent in state custody against his state sentence.

When the BOP prepared Alls' sentence compu-

Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)
(Cite as: 2010 WL 723034 (E.D.Va.))

Page 5

tation, it determined that his federal sentence commenced on December 18, 2007, when Alabama authorities relinquished control of Alls and placed him into the primary custody of the USMS. The authority to make that determination was uniquely the BOP's, *United States v. Hayes,* 535 F.3d 907, 910 (8th Cir.2008), *cert. denied,* 129 S.Ct. 1983 (2009), and its decision was fully consistent with federal law, which holds that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3583(a); *see United States v. Evans,* 159 F.3d 908, 912 (4th Cir.1998) (finding that "federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation"). Contrary to Alls' apparent understanding, the fact that the Alabama court previously had directed that the state and federal sentences were to run concurrently did not compel a different decision. *See Abdul-Malik v. Hawk-Sawyer,* 403 F.3d 72, 75 (2d Cir.2005) ( "The state sentencing court did specify that the state sentence should run concurrently to the federal sentence. However, such a determination is not binding on federal authorities.") While the BOP in its discretion could have designated the Alabama state facility at which Alls previously was confined as the place of his federal incarceration *nunc pro tunc, Barden,* 921 F.2d at 483, its decision not to do did not represent an abuse of its discretion.

*4 On this record, Alls cannot demonstrate that the BOP failed to consider all of the factors required under § 3621 in denying his *nunc pro* tunc designation request. To the contrary, in his declaration, Correctional Program Specialist Johnson attests that "[a]fter review of the factors set forth in Title 18 U.S.C. § 3621(b), the BOP determined that a concurrent designation was not appropriate in Mr. Alls' case." Resp. Ex. 1 at ¶ 19. Attachment 14 to the declaration is a copy of the worksheet the BOP used to assess each of the five factors specified by § 3621(b). It reflects that an operations manager initially recommended granting Alls' request for a retroactive designation, but the section chief arrived at a contrary final determination, expressly based on factors 2 (nature and circumstances of the offense), 3 (history and characteristic of the prisoner), and 4 (any statement by the court that imposed the sentence). As this uncontroverted evidence indicates that the BOP took all five statutorily relevant factors into account before determining that *nunc pro tunc* designation would not be appropriate in Alls' case, no abuse of its discretion can be demonstrated, *Trowell,* 135 Fed. Appx. at 593, and federal habeas relief from its decision is foreclosed. *Nale,* 2009 WL1321507 at *5.

In his "Motion in Response" to respondent's position, Alls argues essentially that federal jurisdiction should be deemed to have commenced and to have become primary over that of the Alabama court on August 3, 2005, when Alls was arraigned in the Middle District of Alabama. Alls reasons that from that time forward, his federal sentence should be deemed to have "run uninterrupted." Pet. Mo. in Response at 7. Thus, Alls contends, the BOP should be required to credit his "uninterrupted" federal sentence with the time he remained incarcerated in the Alabama jail following his conviction and sentencing on the federal charge on June 8, 2006.

Alls' argument is flawed in several respects. First, his supposition that he remained in federal custody following his federal arraignment is erroneous. It is settled that an individual who is placed on bond is not in "custody" so as to obtain credit against a subsequent sentence. *Reno v. Koray,* 515 U.S. 50, 57 (1995) ("[A] defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions ... is 'released.' "); *accord. United States v. Insley,* 927 F.2d 185, 186 (4th Cir.1991). Therefore, as Alls was released on bond following his federal arraignment, Resp. Att. 2, his federal custody plainly did not commence at that time. Alls' corollary contention that he should receive credit against his federal sentence for the time

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)
(Cite as: 2010 WL 723034 (E.D.Va.))

he served between June 8, 2006 and July 22, 2007 because "he was still [in the] primary jurisdiction of federal authorities" during that period thus must also fail. Indeed, as respondent points out, the fact that a writ of habeas corpus *ad prosequendum* was necessary to secure Alls' presence at his February, 2006 federal trial belies his assertion that he was then in federal custody. *See Thomas v. Whalen,* 962 F.2d 358, 361 n. 3 (4th Cir.1992) (noting that a person subject to an *ad prosequendum* writ "is merely 'on loan' to federal authorities."). Lastly, to the extent that Alls in his reply revisits the issue of the BOP's decision to decline his request for *nunc pro tunc* designation, his argument is without merit for the reasons discussed above. The uncontroverted fact that the BOP considered all five factors required under § 3621(b) before denying Alls' application forecloses federal judicial interference in that outcome.

### IV. Conclusion

*5 For the foregoing reasons, respondent's motion for summary judgment will be granted, and summary final judgment will be entered in her favor. Respondent's motion to dismiss will be denied, as moot, and petitioner's Motion in Response to Respondent's Motion to Dismiss will be denied. An appropriate Order shall issue.

E.D.Va.,2010.
Alls v. Stansberry
Not Reported in F.Supp.2d, 2010 WL 723034 (E.D.Va.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.